Nash, J.
 

 The first enquiry presented by the case is, have the defendants been guilty .of a breach of their trust. Justice Story in the 2nd volume of his Equity Jurisprudence, p. 576, sec. 1275, thus sums up the duty of a trustee. lie is to defend the title to the property at law; should any suit be brought concerning it, to give notice to his
 
 cestui que trust,
 
 to prevent any waste or injury to the trust property, &c., and must act in relation to it with good faith and reasonable diligence. He must be particularly careful, says Mr. Willis, in his treatise on trustees, p. 125, to execute the trust faithfully and according to the intention of the parties creating it; and however fully a discretionary power of management may be given, yet if he omit doing what would be plainly beneficial to his
 
 cestui que trust,
 
 he will be answerable. A want of good faith or of proper diligence will subject a trustee to the loss which may be consequent upon it. If the case before us be tried by these principles, the defendants have acted negligently : not with that diligence, which was incumbent on them, but with a delay amounting nearly to an abandonment of the property. Let it be admitted that William D. Freeman was, under the settlement, entitled to the possession of the property during his life, still as the legal estate was in the defendants, they were entitled to take the property out of his possession, if the interest of those in remainder required it, or were bound to take steps to secure it against his illegal acts.
 
 Tidd
 
 v.
 
 Lister,
 
 5 Mad. 429, 32, 33.
 
 Whitfield v. Bennet,
 
 2 P. Wil. 242. Hill on trustees 384-5. They suffered the property to remain in the possession of a man, who they knew to be an unsafe person, to have the management of it. They stood by and saw it wasted, and the negroes sold, not by him,, but for his debts, aman, who, if not
 
 *377
 
 insolvent at that time.they knew to be much embarrassed. And yet they took no steps to protect or secure it. But the case does not rest on general principles. The parties provided a remedy for the very evil, which has occurred, and which was anticipated. The marriage settlement provides, that, when in their opinion, it should become necessary, lor any purposes, to withdraw the property from the possession of William D. Freeman, they should do it. If they had a discretionary power given them, it was not an arbitrary one, to act as a shield for negligence, but one to be exercised and regulated by reason and propriety, and
 
 only
 
 for the benefit of those interested. Hill on trustees, 495. The defendants covenanted, that they would, if it should become necessary, take the pro* pert}' from William D. Freeman. This they did not do, or attempt to do any farther than to demand it. They ought, immediately on his refusal, to have appealed to a Court of Equity, which, upon a proper case, would have compelled him either to surrender the property to the. trustees or secure its forthcoming at the termination of his life estate. And if the interest of William D. Freeman was liable to be sold under execution, the purchasers acquired nothing but what was in him; they stood in his shoes, and might have been restrained from carrying the slaves out of the State, All this they neglected to do. Nor have they, as far as the answer discloses the fact, inade the slightest effort to regain the possession of that portion of the slaves, which has been carried away. This is clearly
 
 crassa negligentia.
 
 .
 

 The defendants however allege, that they ought not to be made answerable, as they took the advice of counsel and acted on it. The answer states, that they were not only' advised they could not disturb the possession of Mr. Freeman, but the counsel
 
 doubted,
 
 if the settlement was not void, for the nonage of Mrs. Freeman, and. that he was disposed to think itjvas void.. It.was very impor*
 
 *378
 
 tant to the defendants, not' only to have good' advice, but' such as would sustain or remove the doubts thus expressed .and protect them in their action. What course-the'rt ought they to have pursued
 
 1
 
 Their’ only safe- course was to have procured the advice of a Court of Chancery, which they had a. right' to resort to. Willis on trustees 125, 2nd Fon. Eq. p. 172, note c. The chancellory's the-only.safe.and secure counsellor to trustees. The counsel however gave no
 
 advice
 
 upon this point, he merely suggested doubts. But if he had given a positive opinion, it wouldmot have protected the defendants: it would have been palpably erroneous. An infant can enter into a' marriage contract in relation to peisonal property, and if he does so is> bound by it. Atherly on marriage settlements p. 49. The settlement in this case was not void.
 

 The maxim, that ignorance of the law will furnish no excuse for a'breach of duty or omission to perform it, is as much respected by Equity as by the law. 1st Fon. Eq. B., 1st ch., sec. 7, note V. 1st Story 121, sec. 3rd. Hill on trustees 149. In
 
 Doyle
 
 v.
 
 Blake, 2nd
 
 Sch. and Lefr. 213, it was admitted, that the defendant, who was an executor, meant to act honestly, but had received wrong advice. Lord Redesdale said, “the Court must: proceed, not upon the-improper advice, under which art' executor may have acted, but upon the act he has done; It under the bestadvice he could procure, he' act's
 
 wrong',
 
 it is his misfortune : but public policy requires that hó" should be'the person-to suffer.” Looking then, alone; to the acts of the defendants, we are.- constrained’ to' say, that they have been guilty of such negligence; as-amounts tó-a breach’of'trust' andsubjectS them’to make good the' injury the plaintiffs have sustained, in consequenCe’of it. In
 
 Beal
 
 v.
 
 Darden,
 
 4 Ire. Eq. 54, th'e Court'say, “the total neglect-to look after the slaves for-three years; W-hen the’ character ofthe-person, in whose possession they were;waatso. bad;- that-he was-generally considere duti fit -1 o'be'
 
 *379
 
 entrusted with the possession of slaves, is almost an abandonment of the property altogether.” Here there has been no attempt made by the defendants, for more than thrice that period oí time, to recover the slaves carried away out of the State or to recover from William D. Freeman the principal money put into his hands by William Harrison, or the value of the other property conveyed in the deed of trust. As to the money and the securities for money, it was unquestionably the duty of the trustees, to have taken and retained possession of the fund for the benefit of those in remainder: and to permit them to remain unprotected in the hands of Freeman, after notice of their not beingsafe in his hands, was a breach of trust. Hill on trustees 386. William D* Freeman died insolvent.
 

 In giving relief for a breach of trust, a Court of Equity endeavors in the first place, as far as possible, to replace the parties in the situation they would have- been in, if no breach of trust had taken place. And for this purpose, when the trust property has been improperly disposed of, and is capable of being followed in specie, it will compel the trustee, or the party in possession, with notice, to reconvey it. If it cannot be followed, or the person in possession cannot be made liable to the trust, the trustee will he decreed to compensate the
 
 cestui que trust,
 
 by payment of the value of the property so lost. And he will be decreed to account for all rents and hires, and interest and other profits, which would or might have been made from the property lost. Hill 522,
 

 There must be a reference to the master, to ascertain the number of the slaves sold to pay the debts of William D. Freeman, which have not been recovered and were alive at the death of said Freeman, and their increase up to that time and their value. And also to take an account of the money and securities for money, which came... into the hands of William D. Freeman from Harrison rifttf-.
 
 *380
 
 was by him appropriated to his own use, with interest upon the value of the abstracted slaves, since the death of William D. Freeman, and to enquire whether the defendants, could, after they received notice of his having re« ceived, have recovered the money from said Freeman, and if he should find they could have recovered it, to compute, interest thereon from the same time.
 

 Per Curiam.
 

 Decree accordingly.