Speakman *v.* Tatem.

---

## THOMAS S. SPEAKMAN

*v.*

## JOHN C. TATEM, WILLIAM G. SPEAKMAN, HENRY D. SPEAKMAN and HOWARD D. SPEAKMAN.

1. The right of a husband in the real estate of his wife, by whom he has had children born alive capable of inheriting it, and where the marriage took place after the passage of the Married Woman's act of 1852, forms a sufficient consideration for a post-nuptial settlement made by the husband and the wife of her property, in the hands of a custodian, by which an interest is given to the husband.

2. Where a post-nuptial settlement, executed by husband and wife, conveyed to a trustee *in præsenti* all the right and interest of the wife in the estate of her father under his will in such a manner that no further act on her part was re-

Speakman *v.* Tatem.

·quired to be done in order to complete the transfer, then the deed is executed .and not merely executory, although the estate assigned and transferred by it is not handed or paid over to the trustee. In such case the trustee can enforce the deed as against the custodian of the estate so transferred.

3. A trustee of a voluntary settlement who has accepted the trust is under ·the same obligations to execute it as a trustee under a will, a guardian of a lunatic or infant, or an assignee in insolvency or bankruptcy. He must exe·cute it actively and must not wait upon the motions of the *cestui que trustent* to incite and prompt his action.

4. Such a trustee must use the same diligence in seeking for and reducing to ·possession the trust property, and the same care in preserving it, that an ordi·narily diligent and careful man would exercise and take in respect to his own ·property.

. 5. A wife assigned her interest in her father's estate to a trustee upon certain ·trusts, among others. to the use of her husband after her decease. The trustee ·accepted the trust in writing, but failed to reduce the trust estate to possession and permitted the wife to collect and receive it herself. Shortly after the date ·of the settlement, and before any of the trust estate had been paid to the wife, ·she abandoned her husband, and three years later he sued her for and obtained .a decree of divorce from her on account of her desertion, which contained a provision that each party should enjoy their separate estate. The husband ·survived the wife, and sued the trustee in equity for the failure to perform his ·duties as trustee under the deed of trust.—*Held,* that the trustee was liable.

Final hearing on bill, answer and proofs. See *18 Stew. Eq. 388.*

*Mr. David J. Pancoast,* for the complainant.

*Mr. Samuel H. Grey,* for the defendants.

PITNEY, V. C.

This is a bill by a *cestui que trust* against his trustee, asking for an accounting of the proceeds of the trust fund alleged to have been received by the trustee. It appearing by the answer ·of the trustee, Tatem, and by the evidence at the hearing, that ·but a trifling amount of what is alleged to be the trust fund ever ·came to the hands of the trustee, the complainant amended his bill by alleging that the trustee failed and neglected to collect .and take possession of the trust fund, and praying that he may ·be charged in this suit with what he might and ought to have ·collected.

The trust was created by deed by husband (the complainant) and wife to the trustee conveying the wife's estate.   By its terms it gave the income to the wife for life, and at her death, the husband surviving, one-third of the income to him for life, and at his death the *corpus* to the three children of the parties.   The material facts are as follows :

In 1852, after the passage of the Married Woman's act, the complainant married Emma E. Draper, daughter of John Draper, of Philadelphia.   The parties resided in Camden, and in 1865 there had been three children born of the marriage, who are defendants herein.   In that year John Draper died in Philadelphia, seized of a large personal estate and divers parcels of real estate, some of which were situate in this state, among them two houses and lots on Cooper street, Camden, in one of which—a brick house—complainant and his wife resided.   By his will he created special trusts of a portion of his estate in favor of several of his children, and included in one in favor of Mrs. Speakman the house in which she resided.   He also gave several legacies, and then disposed of the residue thus :

"All the rest, residue, reversion and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, of which I may die seized, possessed or entitled to, I give, devise and bequeath as follows:  *  *  *  one full, equal and undivided fourth part thereof unto my daughter Emma Elliott Speakman, her heirs, executors, administrators and assigns forever."

There were in the same item gifts in similar language to three other children severally of an undivided fourth part of the residue to each.   By the last item he appointed two of his sons—Edmund and Robert—executors, and authorized them to sell any and all of his real estate except the house and lot in Camden devised in trust for Mrs. Speakman.   By the first account of the executors, filed in the same year, 1865, it appears that all the legacies, including those in trust, had been paid and a partial distribution made of the residue, and it appears by the final account, filed in 1879, that what remained of the residue after the partial distribution of 1865 was composed almost entirely of real estate in Philadelphia.   By the account of 1865 it appears that a frame

house and lot on Cooper street, Camden, was *"awarded"* to Mrs. Speakman as a part of her share in the residue, but how it was awarded does not appear. The deed of trust, which is the basis of complainant's present suit, was dated and executed and duly acknowledged by Mr. and Mrs. Speakman, January 27th, 1868. It was recorded as a deed of land on the same day in the clerk's office of Camden county, and early in February in the office for recording deeds of land in the city and county of Philadelphia. It recites that Mrs. Speakman is possessed of certain personal property and furniture in her dwelling in Camden, and is entitled, as residuary legatee, to a fourth part of the residue of the estate of John Draper, deceased, devised to her by his will—

"which residue consists of certain personal property and real estate, situate in Pennsylvania, New Jersey and elsewhere; and said Emma being desirous that the said property may be secured to her own use during her natural life and be disposed of as hereinafter provided after her death,"

witnesseth that the said T. S. S. and E. E. S., his wife, in consideration of the premises and to effectuate the purposes aforesaid, and in further consideration of $10 &c.,

"granted, bargained, sold, aliened, enfeoffed, released, conveyed, and confirmed, assigned, transferred and set over unto John C. Tatem, his heirs and assigns forever,"

the personal chattels first mentioned and

"the one equal undivided one-fourth part of all and singular the residue of the lands, tenements, hereditaments and real estate wheresoever whereof the said John Draper died seized or in any way entitled to, and of all the personal estate, rights, credits, moneys and effects whereof the said John Draper died possessed of, and which were devised to said E. E. S. by the last will and testament of John Draper, decd.,"

with the appurtenances, reversions, remainders, rents and issues and all the estate &c. in law and in equity of the party of the first part &c. To have, to hold &c. unto said J. C. T., his heirs and assigns, to the only proper use &c. of the said J. C. T., his heirs and assigns forever,

Speakman *v.* Tatem.

"in trust  *  *  *  that the said J. C. T., his &c.,  *  *  *  shall and will at all times hereafter permit and suffer the said E. E. S. to have, hold, use and enjoy"

the furniture &c., and " that he shall hold and will *recover*, *collect* and *receive* and *hold* the one-fourth part of the residue of the estate of John Draper,"  *  *  *  and after the death of either the said J. S. S. or E. E. S.  *  *  *

" the remaining one-third of the net amount of the said rents, income, interest and profits to pay to the survivor of them, the said E. E. S. and T. S. S., during the term of his or her natural life."

Then follows the gift in remainder to the three children.  Attached to this deed is this acceptance :

" John C. Tatem, the grantee above named, hereby assents to and accepts of the above conveyance and the trusts therein contained.

"JOHN C. TATEM."

After the execution of this deed the parties continued to cohabit as man and wife in the brick house on Cooper street, Camden, until the 9th of June, 1870, when Mrs. Speakman abandoned her home, leaving her husband in possession.  On the 14th of the same month Mr. Tatem commenced a suit in replevin against the complainant for the household goods &c. in the house covered by the trust deed, and by virtue of the writ in replevin they were taken by the sheriff from the house and the possession of complainant and delivered to his wife.  From that time on husband and wife never met, and all friendly communication between him and his wife and her brothers, the executors of her father's will, and Mr. Tatem ceased.  Some time before August 8th, 1871, complainant wrote Mr. Tatem a letter, whose terms can only be inferred from Mr. Tatem's reply, which is as follows :

"WOODBURY, 8/9/71.

"*T. S. Speakman:*

"I am in receipt of a note from thee stating that thee wishes to confer with me in regard to the trusteeship of thy children—that 'thee will *endeavor* to meet me at any place in Phila. or C. or vicinity (with one except) which I may name.'  In the first place, the terms of the trust I hold are such that they cannot be altered but with the consent of both parties thereto.  I know and so

does thee that E. E. Speakman will not consent to any change now; therefore it can do no possible good to have *any* talk about it. In the second place, I have *no time* to waste from my business in going to P. or C. to 'endeavor' to meet thee or anybody else on *their* affairs where there is no prospect whatever of either profit or pleasure. In the third place, if thee has anything *practical* to say to me *about the trust,* thee can say it much better, more easily and with less waste of time (which is an important item to me, though I know it is not to thee), and *much more* agreeably to *me,* through the *mail* than in person.

"JNO. C. TATEM."

In June, 1874, and three years after the separation, complainant filed his bill in this court against his wife, praying a divorce from her on the ground of desertion by her. She was duly served with process, but made no defence, and after due proof made *ex parte,* and on November 6th, 1874, the ordinary decree was made against her for her desertion of her husband, which on its face appears to have been made in the presence of her counsel—the same who conducted the replevin proceedings—and contains this clause :

"And the said chancellor, in consideration of the premises and the circumstances shown and appearing to him, hath further ordered, adjudged and decreed, by the power and authority aforesaid: that all the ·property, real and personal, of each of said parties, and all his or her estate therein at law or in equity, shall henceforth continue and remain to him or her, and to and for his or her sole and separate use, freed and discharged of and from all the marital rights of the other as absolutely and entirely as if said marriage had never been had between them."

The final account of the executors of John Draper, filed in 1879, shows that after the first account of 1865, and prior to the execution of the trust deed, they received from an award for damages for land taken for a railroad $8,500, and from the sale of a house and lot in Philadelphia about $9,000, and from two mortgages about $2,400, and that prior to the execution of the trust deed they paid Mrs. Speakman, on account of her share in the residue, $3,500.

Shortly after the execution of the deed one of the executors handed to Mr. Tatem one $100 government bond, which he held until after the decree for divorce, and then handed it to Mrs. Speakman. No other moneys or the representative thereof ever

came to his hands. In June, 1872, after the separation and before the divorce, the executors sold a farm near Philadelphia, called Elmwood, part of the residue of John Draper's estate, for $42,000, receiving $12,000 in cash and a bond and mortgage for $30,000 for the balance. They also, about the same time, realized on a mortgage of $8,000, part of the proceeds of sale of the house and lot on North Sixth street, and then made another partial distribution of the cash in their hands among the four persons entitled to the residue, paying to Mrs. Speakman, June 17th, 1872, $5,000. This money was undoubtedly part of the residue, and was in part at least the proceeds of sale of real estate still belonging to the residue at the date of the deed of trust.

After the decree of divorce, and in 1879, the executors turned all the remaining assets into cash and paid to Mrs. Speakman in cash, as her one-fourth part of the balance of the residue in their hands, the sum of $7,795.08, making, with $5,000 paid in 1872, $12,795.08 paid by the executors to Mrs. Speakman for her share of the *corpus* of the residue after the date of the trust deed and after the date of the separation. Besides there were numerous payments of interest and rents made in small sums from time to time, and which Mrs. Speakman would have been entitled to if they had been first paid to Mr. Tatem.

Mrs. Speakman died in 1887 testate of a will, in which she recited that she was seized and possessed of a considerable real and personal estate devised and bequeathed to her by her father, the disposal of which was contemplated by an inchoate instrument of trust made during her coverture, which trust was never carried out, and had been abandoned and annulled; and that she held said property freed and discharged from all claim thereon by virtue of a decree of this court, and then proceeded to dispose of her property by giving one-fourth thereof to a trust company, in trust for her son Henry D. Speakman for life, with remainder to his children, if any, if not to his brothers, and divided the other three-fourths between her sons Howard and William.

The charge of the complainant is, that the defendant Tatem was clearly in laches and default in failing and neglecting to, so to speak, intercept and collect so much of the moneys paid by

the executors to Mrs. Speakman, after the date of the deed, as represented the *corpus* of the residue, and that he must be charged, as against the complainant, with the amount so paid. The other *cestui que trustent*, viz., the three sons named in the trust deed, and who were made parties after the decision reported in *18 Stew. Eq. 388*, ranged themselves by their answers and at the hearing on the side of the trustee.

The defences set up by the several answers of Mr. Tatem are as follows :

*First.* That he failed to assert any right under the deed, and permitted Mrs. Speakman to take and possess the property covered by it with the knowledge and consent of the complainant, and, from the actions of both complainant and Mrs. Speakman, was led to believe and did believe that the deed was void and of no effect, and that no title to any property came to be vested in him thereunder, and that no obligation or duty devolved on him in the premises, and that complainant by standing by and knowingly, and without objection, permitting Mrs. Speakman to take and receive the property as her own, acquiesced in such conduct, and is estopped from now setting up the deed as against him, Tatem.

This defence is not sustained by the proofs, except that complainant did not request Mr. Tatem to take active measures. The receipt by Tatem, from one of the executors, of the $100 bond, and the suit in replevin, in which he gave his own bond to the sheriff, show that he acted advisedly and quite independent of complainant's wishes, and that he understood his rights and duties as a trustee, and was ready to exercise them in favor of Mrs. Speakman, and the letter of August, 1871, and other circumstances in the case show that he was all the while in sympathy and on friendly terms with the wife. There is not the least proof that the complainant ever knew that any money, except interest and rents paid before the separation, was ever, after the date of the deed, paid by the executors to his wife. No part of the body of the estate was paid until after the separation, and, previous to the filing of the account of 1879, there was no mode in which he could ascertain that any such payment

had been or was about to be made, except by direct application, to the executors, who were unfriendly to him. There is not the least evidence that he ever, by word or deed, encouraged Mr. Tatem to suppose that he had dispensed with or abandoned his rights under the deed, nor was there any proof that complainant supposed that Mr. Tatem was not doing his duty under it. On the contrary, it seems to me that the action of replevin and the letter of August, 1871, were marked and decided indications that Mr. Tatem was aware of his duties and intended to do them.

*A second* defence is the decree of divorce. It is quite manifest that this was more or less relied upon by the wife and Mr. Tatem as a discharge of the trust. It was so claimed in his first answer. At the hearing, however, it was substantially abandoned, except for the purpose of aiding another defence next to be mentioned. Manifestly it could not have been even a mistaken excuse for the payment made in 1872.

*Third.* At the argument defendants' counsel, in his brief, took higher ground not disclosed by his answer or proofs. He insisted that the deed in question was purely voluntary and without any consideration moving from the husband, and that it passed no present title to any property, but was wholly executory and rested wholly upon the mutual relations existing between the parties, and that, those having been destroyed, the deed could not have been enforced by the grantee, and is only good so far as executed by the delivery to the trustee of the $100 bond; and further, that the breach of trust complained of occurred twenty years before the filing of the bill, and in the meantime the party receiving the fund in defiance of the trust has died, and the fund has passed beyond the reach of the trustee.

With regard to the first branch of this defence, it is to be observed that its strength lies in two assumptions, each of which is necessary to its stability. *First.* That no title passed to any property under the trust deed; and, *second,* that it was without any consideration moving from the husband, and, therefore, voluntary and unenforceable in equity. Not only was this defence not set up in the answer or alluded to, except in the briefs of

counsel, but there is no pretence anywhere that the trustee's inaction was due to any such consideration. He never, so far as appears, made any effort to enforce the deed or to collect any moneys under it, but voluntarily permitted the money to be paid to the wife. As to the matter of consideration moving from the husband, it was admitted in the brief of defendants' counsel that the title to the frame house and lot in Camden, which was awarded to Mrs. Speakman as part of the residue of her father's estate, was still in her at the date of the deed of trust, and besides there was the unsold real estate in Philadelphia, which, at the date of the deed of trust, clearly formed a part of the residue, since all the legacies had then been paid.

It seems clear enough that the will of Mr. Draper gave Mrs. Speakman a fee simple in an equal undivided one-fourth part of this land, subject only perhaps to the power of sale by the executors. It seems equally clear to me that, although the complainant may not have had what was once known as an estate by the curtesy initiate in the house and lot in Camden, yet he had a right in it contingent upon his surviving his wife, and she could not convey it without his joining in the conveyance. No proof was given at the hearing as to the state of the law regulating tenancy by the curtesy and married woman's rights in Pennsylvania, which leaves the case subject to the presumptions of the common law. Nor was any proof given as to whether the defendant Tatem was asked to join in, or did join in, any of the conveyances of real estate made after the deed of trust was executed.

It would have been more satisfactory if this question had been fairly raised by the pleadings, and been followed by evidence produced intended to bear directly upon it. This might have been done either by the complainant or the defendant Tatem. The complainant could have made the personal representatives of Mrs. Speakman and the trustee of her sons parties, and prayed additional or alternate relief against them. The defendant Tatem could have brought those parties in by cross-bill and prayed relief over against them. But this has not been done, and, looking at the case as presented, it seems to me that it discloses a

sufficient valuable consideration moving from the husband, consisting of his grant of all marital rights in his wife's estate, to sustain the deed without resorting to and solving the somewhat vexed question, whether the relation existing between them did not of itself constitute a sufficient consideration for the very small contingent interest reserved to him.

Nor am I able to adopt the view so ably argued by counsel, that the deed was wholly executory. The distinction between executed and executory deeds and contracts, in this connection, rests upon the difference between a completed gift and a mere promise or contract to give, which leaves something more to be done by the donor before the donee can take and enjoy the gift. The title to the undivided fourth part of the real estate devised to Mrs. Speakman actually passed and became vested in the trustee, and he became entitled to stand in her place in all respects the same as if he had paid full value for it. Such was clearly the effect of the deed. It executed itself and passed the title and possession under the statute of uses *in præsenti* to the grantee. He had no need to ask any aid from a court of equity to enforce it. *Jeffreys* v. *Jeffreys, 1 Craig & P. 138,* where there was a conveyance *in præsenti* of *freehold* and a covenant to surrender *copyhold*, the former upheld and the latter held invalid; *Hayse* v. *Kershow, 1 Sandf. Ch. 258,* conveyance of freehold; *Viney* v. *Abbott, 109 Mass. 300,* where there was actual transfer of stock.

With regard to so much of the residue as at the date of the deed consisted of a bond and mortgage and other chattel interests, Mrs. Speakman had no such direct interest and estate in it as she had in the realty, but whatever she had was capable of being assigned and transferred absolutely, and I think the deed accomplished that result. It left nothing to be done by her to complete the gift. The trustee by it became entitled to stand in her shoes and need ask nothing further from her. And this is the test of the completion of the gift as established by the more modern cases. Says Mr. Watson, in *A Compendium of Equity, p. 302 :*

" If nothing more remains to be done or can be done by the grantor or donor—if, as far as he is concerned, the conveyance or assignment is complete, and he has done all that is necessary to be done, having regard to the nature of the property—the assignment or other assurance will be effectual in equity."

The English cases are collected by this author at the place cited, and also in the *notes* to *Ellison* v. *Ellison, 1 Lead. Cas. Eq. *2, *5*, and in *Lewin on Trusts *88, *89*. Among them, a leading case, is *Kekewich* v. *Manning, 1 DeG., M. & G. 176*, where all the cases are ably reviewed in a considered judgment by Lord-Justice Knight-Bruce, and which contains in itself an answer to most if not all the arguments of defendant addressed to me, against the enforceability of this deed, and must be held as overruling several of the cases relied upon in that argument. To the same effect is *Voyle* v. *Hughes, 2 Sm. & G. 18, 23 L. J. Ch. (N. S.) 238; Stone* v. *Hackett, 12 Gray 227; Gulick* v. *Gulick, 12 Stew. Eq. 401;* and see the very recent case of *Bills* v. *Tatham, L. R. (1 Ch. Div.) 82* (1891), which, in some of its features, much resembles that before the court. See, also, *Walker* v. *Dixon Crucible Co., 2 Dick. Ch. Rep. 342.*

The case presents no feature which, in my judgment, gives any show of defence which the executors of John Draper could have set up against any action which the defendant Tatem might have brought against them to recover the share of Mrs. Speakman in the residue of her father's estate.

It was argued that the deed does not sufficiently describe the real estate in question. But it seems to me that it does so by the very universality of its expressions above quoted. It conveys the one equal one-fourth part of the residue of the lands of which John Draper died seized, and which were devised to her by his will &c.

As to the lapse of time since the breach of trust, it seems to me that consideration can have little or no weight standing by itself. As before remarked, there is no proof that complainant knew of the abandonment of the deed of trust by the trustee, or in the least sanctioned or acquiesced in it, or by word or deed encouraged it. The first breach was in 1872, and the second in 1879. It was discovered after bill filed, which latter was shortly

Speakman v. Tatem.

after complainant learned of the death of his wife. The complainant, in my judgment, had a right to suppose, after the replevin suit and letter of August, 1871, that the trustee would do his duty.

Another defence set up is, that the complainant never requested the trustee to execute the trust. If there had been no acceptance in writing, and, to the knowledge of complainant, nothing had been done by the trustee under the trust, there would be, as it seems to me, great force in this position. But the trustee accepted in writing, and undertook to execute the trust. The deed was produced by him at the hearing. He actually did in part execute it by accepting the small government bond under it, and by bringing the suit in replevin for goods to which he could have had no title except by the deed in question. Before 1872 there was nothing further he could do, unless it be to receive certain income and pay it over to Mrs. Speakman, and with Mrs. Speakman's assent, who alone was interested in the income, he might well consent that it be paid directly to her. Such conduct was not an abandonment of the trust. The circumstances up to that time—1872—called for no other action, but whatever action was necessary to be taken he did take, and it appears that he was familiar with the contents of the deed. He was a man of intelligence, and he does not set up that he submitted the situation to counsel and asked his opinion, or that he supposed that he was under no duty to be active and might content himself with passively receiving what might be paid or handed to him. It is plain that he did not, to say the least, either seek instruction or suggestion from the complainant, or encourage him to make any. Under these circumstances, and in view of the character of the trust, I find it difficult to find any sufficient excuse in equity for his complete inaction after the suit in replevin had done its work. Says Mr. Lewin, p. *243 :

" As soon as a trustee has accepted the office he must bear in mind that he is not to sleep upon it, but is required to take an *active* part in the execution of the trust. The law knows not such a person as a *passive* trustee. * * * When a trustee has entered upon the trust he is bound at once to acquaint himself with the nature and particular circumstances of the property, and to take such steps as may be necessary for the due protection of it."

To the same effect is the language of Mr. Perry in his treatise on *Trusts* § *266*. And having once accepted and undertaken the trust, he cannot of his own motion abandon it and evade its duties, and can only be relieved by the aid of a competent court. *Perry Trusts* § *401 ;* and see *2 Pom. Eq. Jur.* § *1067* and *note.* These principles seem to me beyond dispute or question, and to be elementary and fundamental and a necessary part of the system of trusts. I am unable to perceive any difference in principle in respect to the question now in hand between the case of a trustee appointed by will and one by deed, where both have accepted the trust by unequivocal acts. In fact, it seems to me that executors, administrators, guardians of infants and lunatics, assignees in insolvency and bankruptcy, and trustees under marriage or other voluntary settlements, all stand upon the same plane in this respect, viz., that if they accept the office they must perform its duties *actively*, not *passively*, and must not wait upon the motion of the persons interested as *cestuis que trust* to incite and prompt their actions. The trustee must act in and look after the interest of all the *cestuis que trust* with perfect impartiality. The standard is this : He must use the same diligence in seeking for and reducing the trust property to possession, and the same care in preserving it, that an ordinarily diligent and careful man would exercise and take in respect to his own property. It would be highly dangerous to adopt any other rule or to abate its rigor in the least. It is not necessary to illustrate by instances. In the case in hand some of those entitled in remainder were or might have been infants at the time the trustee permitted the funds here in question to pass into the hands of one of the donors. The trust was irrevocable, except by the consent of both donors. Suppose, now, Mrs. Speakman had squandered these funds or diverted them by will to other objects, would the rights of the remaindermen have been gone ?

The disposition of courts of equity to hold trustees to an active attention to the duties of their office, is illustrated by the case of *Taylor* v. *Millington, 4 Jur.* (*N. S.*) *204*, which in many of its aspects resembles the case before the court. See, also, *Youde* v. *Cloud, L. R.* (*18 Eq. Cas.*) *634 ; Ex parte Ogle, L. R.*

(8 *Ch. App.*) *711* (at *p. 716*); *Butler* v. *Carter, L. R.* (*5 Eq. Cas.*) *276; Ex parte Graves, 2 Jur.* (*N. S.*) *651.*

There is one piece of evidence which perhaps should be noticed.

The defendant Tatem, after stating how he came into possession of the $100 bond, was asked by counsel for complainant why he did not take possession of any of the rest of the property, and answered:

"Because it was my understanding, from the first, that I was not to do it during the lifetime of Mrs. Speakman.

"Q. How did you get that understanding?

"A. I couldn't say positively; from the conversations with the parties; I believe."

And in answer to a question he said that was the best account he could give of it. To whom he referred by "the parties," he did not explain, but supposing he meant Mr. and Mrs. Speakman, I confess I am at a loss to understand how such an understanding could have been arrived at, except, of course, as to the household goods, by an intelligent gentleman like Mr. Tatem, and think his memory must be at fault. The deed did provide that the household goods were to remain in Mrs. Speakman's use during her life, and then that the trustee should take them, and it needed no conversation with the parties to get such an understanding on that subject, as well as to the rents and profits of the estate while in the executors' hands. But as to the body of the estate—if that was to be left in Mrs. Speakman's possession and under her control during her lifetime, how was the trustee to obtain possession of it at her death? The absurdity of the proposition is so manifest that I cannot believe it was ever entertained. No doubt it was said and understood that, as to the rents and income of the one-fourth of the residue while in the executors' hands, it was idle for the trustee to collect it in order to pay it over at once to Mrs. Speakman, and that he might properly permit the executors to pay it to her directly, as they did.

But whatever illusion of this kind the trustee was under as to his duties must have been dispelled by the circumstances attending the separation, and the subsequent non-intercourse between

Speakman *v.* Tatem.

the parties, during which the *corpus* of the estate was turned over to Mrs. Speakman. It seems impossible to suppose that the trustee could have believed or understood that the complainant would, after the separation, consent that the body of the estate should be paid to his wife.

One other point made by defendant may be noticed. It is urged that the marital relations between the parties constituted in fact the only consideration, so far as complainant is concerned, for this deed, and as those have been destroyed by the complainant of his own free will, he ought not now to be permitted to come into equity to enforce so hard a claim as this will prove to be. I am unable to perceive any value in this contention. All that the husband could receive from this deed—entered into undoubtedly with great deliberation, and after due advisement by both parties —was the use for life of one-third of the estate if he survived his wife. And the contest here is over the interest on a little over $4,000 during the remainder of his life. It cannot be said that the husband had any advantage in the bargain. But he had the right to the benefit of the society of his wife, and the enjoyment with her, during their joint lives, of the income of the whole estate. Of this she deprived him by her unlawful and unjustifiable desertion of him. So far she stands in the wrong, and no reason is seen why the husband should not have the benefit of his bargain, but the contrary. If so, how is his position changed by his asking the court to free him from the bare obligation of the marital relation, of all benefit from which his wife had already deprived him? I do not see that the standing of the complainant as a suitor in this court is at all affected by the decree of divorce.

In my opinion the complainant is entitled to relief to the extent of the money which the defendant did receive and might have received, and which I ascertain to be the sum of $12,895. He is also entitled to an inquiry as to the value of the specific chattels remaining at the death of Mrs. Speakman, and as to the rents of the frame house in Cooper street.

After the cause had been submitted, the defendants asked leave to open the case to enable them to set up, by way of answer, a

plea of bankruptcy proceedings voluntarily taken by complainant after the deed of trust. On hearing the motion, leave was granted to complainant to amend his bill by setting out the proceedings and bringing in the assignee in bankruptcy as a party. This has been done, and deprives the defendant Tatem of all further interest in those proceedings. The only ground upon which he could set them up is, that he might be called upon hereafter to answer to the assignee; against this he will be protected by the decree of the court.

Whether the assignee will be entitled to receive the earnings of the trust fund during complainant's lifetime will be considered hereafter.