HESTER E. DE BAUN v. JOHN T. BRAND.

1. At a sale of testator's property by a decree of the Court of Chancery, the defendant agreed with the plaintiff that if the plaintiff would not bid against him he would pay her and other legatees the amount of their legacies under the will. Only one of the other legatees consented to or knew of this arrangement.

2. This agreement is contrary to public policy and void, and will not support this action brought by the plaintiff to recover from the defendant the amount of her legacy.

On case certified.

The Bergen Circuit Court has certified into this court for its advisory opinion the question presented in its certificate, as follows:

"HACKENSACK, N. J., October 2d, 1896.

"This action was brought upon an agreement made by the defendant with the plaintiff to pay her the sum of two thousand dollars as hereinafter stated.

"The following facts were proven at the trial: The father of the plaintiff and defendant, one Amos Brand, died seized of a farm in Saddle River township, Bergen county, on March 4th, 1879.

"The said Amos Brand died as aforesaid, leaving a will, which was afterwards duly probated in the surrogate's office of Bergen county, in which he made the following bequests:

"To his wife, Jemima, an annuity of one hundred and fifty dollars during her lifetime.

"To his daughter, Hester E. De Baun, the plaintiff in this suit, the sum of two thousand dollars, to be paid within six months after the sale of his real estate.

"To his son, Edward A. Brand, the sum of one thousand dollars, to be paid within six months after the sale of his real estate.

"By the terms of the will the aforesaid legacies were made a charge upon the real estate of the said Amos Brand, which,

as far as appeared by the evidence, consisted solely of the farm in question, and which the testator directed the executors to sell at auction within two years after his death. The defendant, John T. Brand, and his brother, George A. Brand, were nominated in the will, and duly qualified, as executors thereof, and were also made residuary legatees of the balance of the estate remaining after the payment of the aforesaid legacies.

"There was no evidence that any of the legacies mentioned were ever paid, and sometime in the year 1883, the widow, Jemima Brand, obtained a decree in a suit instituted by her in the Court of Chancery, to which all the persons mentioned in the will were made defendants, directing a sale of the aforesaid farm to satisfy and pay so much of her annuity as was then in arrears.

"By the terms of the decree, the defendant, John T. Brand, was first to be paid, out of the proceeds of such sale, the amount of the principal and interest of a mortgage executed to him by his father, Amos Brand, before the latter's death.

"Under and by virtue of a writ of *fieri facias* issued out of the Court of Chancery upon said decree, the said farm was advertised to be sold on October 17th, 1883, by the sheriff of the county of Bergen. Upon the day of the sale and before it actually took place, the defendant made a verbal contract with the plaintiff, by the terms of which he agreed that if she would let him purchase the said farm when it was offered for sale by said sheriff, he would pay her and other legatees the amount of the legacies under the will.

"The said farm was duly sold by the sheriff of the county of Bergen on October 17th, 1883, at public sale, and the defendant, in pursuance of said arrangement, bid it in for three thousand one hundred and thirteen dollars and sixty-two cents, the amount of his claim and the widow's, and obtained a deed for the same from the said sheriff.

"The plaintiff, on account of said contract she had made with the defendant, refrained from bidding on the farm at the sale, although she had intended, before the time the said

bargain was entered into, to go to the sale and pay as high as seven or eight thousand dollars for the property if necessary.

"There was no proof that any one of the other legatees mentioned in the will ever consented to said agreement between plaintiff and defendant, or were aware of its having been made, except that one of them, George A. Brand, assented to it.

"It was further proven that one Joseph Thompson attended said sale and wanted to bid upon the farm, being willing to pay six or seven thousand dollars therefor, and upon being informed of the said bargain by the defendant, refrained from bidding on account of it.

"Upon the trial, at the close of the plaintiff's case, the defendant moved for a nonsuit on the ground that the contract shown by the evidence was against public policy and void, and the court reserved its decision upon said motion.

"Whether a nonsuit should be ordered is a question reserved and certified to the Supreme Court for its advisory opinion.

"JONATHAN DIXON, *Judge.*"

Argued at February Term, 1897, before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Zebulon M. Ward.*

For the defendant, *William W. Watson.*

The opinion of the court was delivered by

VAN SYCKEL, J.   Agreements having for their object the suppressing of competition in bidding at public sales have been very generally regarded with disfavor by courts when their aid has been invoked to enforce them.

As early as the days of Lord Mansfield it was held to be contrary to good faith, and a fraud upon the real bidders, for the owner to employ puffers to bid for him at an auction. *Bexwell* v. *Christie, Cowp.* 395; *Howard* v. *Castle,* 6 *T. R.* 642.

The converse must be equally true that an arrangement to suppress bidding, to the detriment of the owner, is inimical to good faith and a fraud upon the owner.

The law, justly administered, guards with like care the rights and interest of bidder and owner.

In *Jones* v. *Caswell*, 3 *Johns. Cas.* 29, the court refused to enforce payment of a promissory note, given to induce the payee to desist from bidding at a sheriff's sale.

Mr. Justice Kent united with Mr. Justice Radcliff in placing the contract in the same category with the employment of puffers by the vendor, and in pronouncing it contrary to good faith and sound public policy.

That case came under review in our own court and was approved by Chief Justice Ewing, in *Gulick* v. *Ward*, 5 *Halst.* 87, where the court refused to recognize the validity of an engagement by the defendant to pay the plaintiff $1,000 if he would forbear to bid for carrying the mails.

In *Morris* v. *Woodward*, 10 *C. E. Gr.* 32, the complainant agreed with a mortgagee defendant that if such mortgagee would not bid, and would permit the complainant to buy the mortgaged premises, the complainant would pay said defendant his claim against the property. It was held that this arrangement was a fraud upon the mortgagor, and that it vitiated the sale.

In *Gardiner* v. *Morse*, 25 *Me.* 140, the agreement was that if defendant would not bid at a bankrupt sale plaintiff would . in consideration thereof surrender a claim he had against defendant. The court refused to entertain such a defence to a suit by the plaintiff for the claim, on the ground that the stipulation was to be classed with fraudulent combinations and contrary to public policy.

The like view was taken in the following cases where the undertaking sought to be enforced was made in consideration of a promise to abstain from bidding at a public auction: *Gibbs* v. *Smith*, 115 *Mass.* 592; *Goldman* v: *Oppenheim*, 118 *Ind.* 95; *Atlas Bank* v. *Holm*, 71 *Fed. Rep.* 489; *Doolin* v. *Ward*, 6 *Johns.* 194; *Barton* v. *Benson*, 126 *Pa. St.* 431.

Judge Story, in treating of this subject, says: "Such contracts are void as against public policy and as tending injuriously to affect the character and value of sales at public auction, and to mislead public confidence. They operate virtually as a fraud on the sale." 1 *Story Eq. Jur.*, § 293.

In the case of *Marie* v. *Garrison*, 83 *N. Y.* 14, there was no contract to refrain from bidding, and in *Hopkins* v. *Ensign*, 122 *Id.* 144, the contract was regarded as not infirm, because everyone who had any substantial interest in the land consented to the arrangement.

In the case *sub judice*, the agreement of the defendant was that he would pay the plaintiff and other legatees under the will the amount of their legacies.

There is no proof that any of the other legatees, except George, knew of or consented to the agreement. Those not assenting might have been unwilling to accept the personal obligation of the defendant to pay their legacies.

It may also be that there are creditors who were injuriously affected by this arrangement.

The Circuit Court is advised that the contract is against public policy and void, and that a nonsuit should be ordered.