HESTER E. DE BAUN, PLAINTIFF IN ERROR, v. JOHN T. BRAND, DEFENDANT IN ERROR.

One who has an existing interest in property to be sold at a public sale may, for the protection of such interest, lawfully agree not to bid at the sale.

[*Argued March 22d*, 1898 ; *decided June 20th*, 1898.]

On error to the Bergen Circuit.

For the plaintiff in error, *Zebulon M. Ward* and *James H. Rogers.*

For the defendant in error, *William W. Watson.*

The opinion of the court was delivered by

GARRISON, J.   The question to be decided is whether a person who has an existing interest in property to be sold at a public sale may, for the protection of such interest, lawfully agree not to bid at the sale.

The writ of error in this case brings up a judgment of nonsuit entered in the Bergen Circuit, in conformity to the advisory opinion of the Supreme Court rendered upon a case certified.

The report of the advisory opinion of the Supreme Court (31 *Vroom* 283) is prefaced by the statement of facts certified to that court and shows that the question reserved by Mr. Justice Dixon at the trial was whether the contract relied upon by the plaintiff was against public policy.   The decision of the Supreme Court was that the agreement was void and that the plaintiff should be nonsuited.   This was done and error is now assigned upon the advisory opinion under section 249 of the Practice act.

The facts in evidence at the close of the plaintiff's case were these : The defendant and the plaintiff were brother and

sister. The property to be sold was a farm of which their father had died seized. By the father's will, legacies to the plaintiff and to Edward, another brother, were charged on the land, as also was an annuity to the testator's widow. Of this will the defendant and Edward were the executors. They were also residuary legatees. The sale in question was made under a decree obtained by the widow to satisfy the arrearages of her annuity. Under these circumstances the plaintiff agreed to let the defendant buy at the sale upon his agreement that he would pay off all the legacies.

The Supreme Court regarded these facts as showing " an agreement having for its object the suppression of competition in bidding at a public sale," and, under the general rule of public policy, held that the Circuit Court should not lend itself to the enforcement of an agreement of this nature; hence it advised that the plaintiff be nonsuited.

The certified case undoubtedly showed an agreement that restricted competition at a public sale, but it likewise showed that the plaintiff, when she made the agreement, had an existing interest in the property which it was her right to look after and protect at the sale. Her agreement, therefore, may have had for its object the protection of her interest and not the suppression of competition. A jury might so have found. It was assumed by the Supreme Court that the agreement was for the illicit object, but a motion to nonsuit must deal with that inference from the facts that is most favorable to the plaintiff. For the purposes of the case before us the agreement must be regarded as one made by the plaintiff with the object of protecting her interest in the land, but with the effect of restricting competition at the sale. The question that then arises is whether such an agreement is within the rule of public policy applied to it below. As this phase of the case is not discussed at all in the advisory opinion and is not dealt with in a satisfactory way in any of the cases cited, it can be best placed on its proper footing by a brief consideration of the spirit and reason of the general rule of public policy that has been invoked.

The class of sales to which the rule of public policy in question attaches includes execution sales and judicial sales generally as well as tax sales and all others in which, in the administration of the law or of government, the property of a private owner is sold *in invitum.* In every sale of this sort there is a creditor and a debtor element, each of which is deemed to be beneficially served by the rule of public policy under consideration. That the tendency of such a rule is to secure to the creditor class the satisfaction of its claims is obvious. To the debtor or owner it is but common fairness that the power that compels the sale of his property shall view with disfavor whatsoever tends to lessen normal competition. By the policy of the law the property is offered to the public; hence it is part of the same policy that the public shall, with respect to the sale, remain what the word implies, "open," free from bargains that contract it as a body of normal competitors. Of such a policy neither the public nor any individual can justly complain, since it affects no one in his rights or property, but merely prescribes how the rights and property of others shall be observed and protected.

There is, however, a class of persons who cannot, within the spirit and reason of this rule, be regarded merely as part of the general public. Persons who, by virtue of lien or ownership, or otherwise, have an existing interest in the property to be sold, do not stand on the same footing as the general public. Incidental to their interest in the property is the right to employ all fair means for the protection of such interest, and to this end to make such honest bargains as their interests seem to require. It is no part of the public policy in question to rob one person of his rights in order to secure those of another. Upon the other hand, the mere possession of a right to protect one's own interest will not be permitted to cloak a violation of the rule under color of such right. Between these two exhibitions of the law lies its true application, which in the nature of things must often turn upon a question of fact.

The failure to recognize this distinction in most of the de-cided cases renders them of no value, and even in the face of decisions to the contrary, we are, in this state, at liberty to adopt that rule that seems to us to be most consonant with justice and with the true purpose of the policy of the law, which is not that persons specially interested are excepted, *as a class,* from the operation of the general rule that forbids bargains that restrict bidding, but that the general rule, when judged by its own spirit and reason, does not extend to the case of a party with an existing right to be protected at the sale whose agreement was for the protection of such right and not for the purpose of cheapening the sale. This I conceive to be the correct rule, even where the arrangement entered into for the protection of the right may incidentally lessen competition at the sale, or even if such be its inevitable result.

The application of these views to the record and bill of exceptions before us leads to the reversal of the judgment that was directed by the Circuit Court under the advisory opinion of the Supreme Court. Upon the facts certified as consti-tuting the plaintiff's case it could not be assumed that her agreement with her brother was not made with the object of protecting her interest in the land. Hence, she should not have been nonsuited.

I have examined the cases cited by the court below, as well as those collected by the industry of the counsel in their briefs in this court, but find no reason for making any extended remarks upon them. It would be, by comparison, an easy task to overrule those cases that fail to see a distinction that seems to us to be so clear, but to justify those decisions that are in apparent harmony with our own is not so easy. In many instances stress is laid upon the fact that all parties in interest had agreed to the restriction of competition, a circum-stance that evidently is entitled to no weight upon a question of public policy. If the protection of an existing interest did not authorize the agreement, it was a mere combination to violate the policy of the law. Other cases go upon the notion

that, in point of ·fact, the bidding was not diminished.   This assumes that the rule of public policy is based not upon the tendency of the illicit bargain, but rather upon the result of such bargain in the given case.

Upon the whole the New York cases are the most instructive.   The latest of these (*Hopkins* v. *Ensign*, 122 *N. Y.* 144) gathers up much of the case law upon the subject.   Still more copious citations are to be found in the *American and English Encyclopedia of Law*, under the titles "*Judicial Sales*" and ."*Auctions.*"

The views I have expressed lead to a reversal of the judgment of nonsuit, with an order that the record be remitted to the Bergen Circuit, there to be proceeded with as if the advisory opinion of the Supreme Court had been that the nonsuit should not be granted.

*For affirmance*—LUDLOW.   1.

*For reversal*—THE CHANCELLOR, COLLINS, DIXON, GARRISON, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH.   9.