In the matter of the estate of, ANN SHARP, deceased.

[Filed February 26th, 1901.]

In respect to claims of his intestate upon third persons, an administrator is only responsible for the exercise of such diligence and prudence as men of discretion would employ in their own affairs. If circumstances require him to employ a legal adviser, and he makes the selection in good faith and with reasonable prudence, he will not be responsible for errors or mistakes of counsel so employed.

---

On appeal from a decree of the Hunterdon county orphans court.

*Mr. Richard S. Kuhl,* for the appellant.

*Mr. George H. Large,* for the respondent.

MAGIE, ORDINARY.

The decree appealed from is objected to on the single ground that the court below, in making it, had declined to surcharge the account of Jacob F. Sharp, administrator of Ann Sharp,

deceased, with the principal and interest of a bond and mort-
gage of Peter W. Melick, which was inventoried by the admin-
istrator as being "in court," and as being worth, for principal
and interest, $2,800.

The facts disclosed by the evidence, as existing at the time
the inventory was made, were the following: Ann Sharp was
the holder, in her lifetime, of a bond made by Peter W. Melick,
James Pidcock and Peter Voorhees, the two latter persons being
sureties, which bond was secured by a mortgage upon a farm
of Melick in Somerset county. The legal adviser of Mrs. Sharp
was Martin Wyckoff, who had been the executor of her husband's
will. He was employed by her to foreclose the Melick mort-
gage. He obtained a decree in her favor, and upon an execution
issued thereon the property was exposed to sale by the sheriff
of Somerset county on June 15th, 1891. It appears that, at
that time, there was due upon the decree, for principal, interest
and costs, $2,973.13. Wyckoff, the counsel of Mrs. Sharp, and
Jacob F. Sharp, who was her son and her agent, attended the
sale. Voorhees and Pidcock, the sureties, and Alvah A. Clark,
Pidcock's counsel, were also present. Before the sheriff put up
the farm for sale under the execution it was agreed by Wyckoff
and Jacob F. Sharp, acting for the mortgagee, and by Pidcock
as surety and Clark acting for him, that Pidcock should be per-
mitted to buy the property at the sale. This manifestly in-
volved the agreement of the mortgagee not to bid against Pid-
cock. In consideration of that agreement, Pidcock contracted
that, upon his purchase of the mortgaged premises at the sheriff's
sale, he would pay the costs and expenses and accrued interest
and so much of the principal as would reduce it to $2,000, and
that he would secure the payment of the remaining principal
by a mortgage to Mrs. Sharp upon the farm in question. The
contract between the parties was not reduced to writing.

When the sheriff exposed the farm to sale under the execu-
tion Pidcock became the purchaser for $1,100, and the sheriff
afterward conveyed the farm to him by a deed bearing date
July 2d, 1891, and recorded July 8th, 1891.

The uncontradicted evidence is that the transaction which

occurred at the sheriff's office before the sale was reported to Mrs. Sharp and approved of by her.

Mrs. Sharp died on the 13th day of July, 1891, and her son, Jacob F. Sharp, was, shortly after, appointed her administrator, and included in his inventory the bond and mortgage of Melick as being "in court," and as being worth $2,500 principal and $300 interest.

It appears in the case that the sheriff paid to Wyckoff the whole of the $1,100 paid by Pidcock at the sale, except what was necessary to pay his costs and expenses, and that Wyckoff, after deducting taxed costs and his compensation, paid to Jacob F. Sharp, the administrator, the sum of $800, for which he has accounted.

The question presented by this appeal is whether he should be charged with the $2,000 included in the $2,800 recognized by his inventory.

In the court below some consideration was given to the effect of the transaction of June 15th, 1891, and the orphans court expressed the opinion that the contract between Pidcock and the complainant in the foreclosure was wholly void, as being a contract to prevent bidding at a foreclosure sale, and so contrary to public policy.

Since the decision in the court of errors, in *De Baun* v. *Brand*, *32 Vr. 624*, reversing the decision of the supreme court in the same case, in *31 Vr. 283*, it may be questioned whether a contract such as the evidence discloses might not have been made between the parties interested in the sale and be a contract not obnoxious to public policy. But assuming that such a contract could have been made, I think it manifest that no enforceable contract was made. Manifestly, it was a contract to secure a lien upon an interest in lands, and fell within the provisions of the statute of frauds, denying the right of action upon contracts of that character not put into writing.

I therefore agree with the court below that the contract in question was not one which could have been enforced by Mrs. Sharp.

But it is obvious that Jacob F. Sharp is not to be charged, as administrator, with the uncollected amount which that con-

tract, if enforced, would have produced. His mother was then living. His part in the transaction was that of agent for her. He acted therein in connection with her legal adviser and upon his advice, and his mother, on being informed of what had taken place, approved his conduct.

Whether Jacob F. Sharp should be charged with the $2,000, to secure which Pidcock had agreed to make a mortgage upon the farm, must depend upon his conduct after the death of his mother, and while he was charged with the responsibilities of her administrator.

When he became administrator and proceeded to inventory her estate he recognized the existence of this claim, and indicated in his inventory that it was one in litigation. This was only partially true, but plainly represents the impression produced on his mind by what had taken place in his presence, for it is obvious that he deemed that the $2,000, yet unpaid, was in some way enforceable by means of the decree and the contract made in the sheriff's office. It is also apparent, from the uncontradicted evidence, that his legal adviser, who had been his mother's counsel and was continued by him as his own counsel, advised him that the agreement made in the sheriff's office could be enforced, and the mortgage could be compelled to be made and delivered upon its terms, so that the inventory fairly expresses the situation as it appeared to the administrator.

Looking at the agreement made in the sheriff's office as one in fact and in law unenforceable, it is obvious to us now that the sole recourse of the administrator to enforce the payment of the unpaid principal of the mortgage foreclosed was an action upon the bond against the principal and his sureties for the deficiency which had not been made up by the sale under the execution in foreclosure. But by the provisions of the "Act concerning proceedings on bond and mortgage given for the same indebtedness, and the foreclosure and sale of mortgaged premises thereunder," approved March 12th, 1880, and the amended act passed March 23d, 1881, such an action required to be commenced within six months from the time of the foreclosure sale.

What, then, was the duty of the administrator? He had continued to employ the same counsel who, in behalf of his mother,

had obtained a decree and had entered into the agreement on the day of sale for her. It is plain that he was never advised that he might have proceeded to collect the deficiency by action upon the bond, but was continually advised that he could procure a mortgage securing it, which had been promised at the time Pidcock bought the property. The counsel he had employed had not only been the counsel of his family and of his mother, but was in good standing, nor am I prepared to say that in failing to advise recourse to the bond he necessarily indicated a lack of judgment or professional skill, for it is obvious that he relied implicitly on the agreement made by Pidcock and his counsel respecting the mortgage security for that deficiency. At all events, I am unable to say that an administrator who has employed counsel reputed to be competent is to be charged with neglect of duty when he accepts the advice given to him and acts upon it honestly and in good faith. That the administrator did so abundantly appears. He not only urged his counsel to demand and obtain the mortgage, but applied for it himself several times, and evidently confidently expected to obtain it. While endeavoring thus to enforce the performance of a contract which he believed to be binding, Wyckoff left the state. Thereupon the administrator employed a firm of repute to take up and prosecute the matter. It was the firm of Voorhees & Cotter. At that time more than six months had elapsed since the sale. Administrator's new legal advisers deemed it proper to bring an action for him against both Pidcock and Clark. It was an action in tort, and the declaration therein was met by a demurrer by Clark. That demurrer was sustained in the supreme court. The case remained undisposed of, probably because Pidcock had, in 1893, become insolvent. It should be stated that before the argument of the demurrer Mr. Voorhees had died, and the administrator had employed his present counsel.

All that is disclosed by the evidence clearly indicates that the administrator, in dealing with this unusual conjunction of circumstances, employed counsel whom he had a right to deem competent; that he accepted their advice; that he had obeyed their instructions, and sought, by their means as well as by his own

personal persuasions, to bring about the performance of the contract, which, though unenforceable at law or in equity, had, at least, a foundation in good morals.

The administrator is not the insurer of the collection of the uncollected claims of his intestate. At the most, he is responsible for the exercise of such diligence and prudence as men of discretion and intelligence would ordinarily use in their own private affairs. In the selection and employment of successive counsel, in the endeavor to collect the claim in question, it is impossible to deny that the administrator had done what a man of sense and intelligence would have done in respect to his own private affairs. To find him lacking in duty because he accepted the advice of the counsel whom he had employed, would require him to be charged, not with his own negligence, but with the negligence of others. Administrators are necessarily compelled at times to employ legal advisers, and commit to their wisdom and intelligence the conduct of litigation. When they have made the selection in good faith, and with reasonable prudence, they are not to be charged with the errors or mistakes of those whom they have employed.

It results that the decree below must be affirmed.