Rose S. Laden excepts to the account of the trustees. The exception relates to certain shares which once belonged to Jacob Fischel and which were the subject of Laden v. United ConclaveBuilding and Loan Association, 134 N.J. Eq. 24.
In August, 1941, the association dissolved and the accountants were appointed trustees to liquidate its assets. The association, as is not uncommon, had no stock ledger or stock transfer book. Its only records of members were the stubs of the stock certificates and the ledger recording members' accounts. As the stubs were not indexed, the officers of the association and its accountants were used to relying on the ledger to show who were members, how many shares each held, c. The ledger showed Fischel as the owner of the shares in question and so did the closing report of the auditor made in preparation for dissolution.
The trustees prepared "Liquidation certificates" for issuance to members in exchange for their old stock certificates, *Page 64 
and members were notified to bring in their old certificates. Accepting the auditor's membership list as correct, the trustees drew up liquidation certificate No. 54 in the name of the Estate of Jacob Fischel — they were aware that he had died in 1939 — but they did not deliver it, as the administratrix did not demand it, or send in the old certificates. Then, early in October, 1941, the trustees found among some old papers in the association's safe, the Fischel certificates, none of them endorsed. And they discovered from the stubs of the stock certificate book that the certificates had been transferred to Federal Trust Company and new certificates issued to that company. The possession of the certificates by the association did not appear particularly significant, since building and loan members frequently leave the certificate with the association and keep only a passbook. Also, the trustees knew that trust companies are not apt to invest in building and loan shares, and they concluded that the transfer to the Trust Company had been made only for security. Their secretary, Mr. Katz, wrote the trust company:
"Our records show that at one time deceased Jacob Fischel had several certificates pledged with your bank as collateral for a loan. Eventually these certificates were exchanged for new certificates in the name of the Federal Trust Company. * * * Please check your records and inform me whether or not you hold certificates of this association, as we are exchanging them for new liquidation certificates."
The company replied in the negative. A few weeks later, Mr. Katz wrote counsel for the Fischel estate, telling of finding the certificates and the issuance of new certificates to the trust company, and adding:
"I suggest you contact them and try to trace the matter to the release of the certificates by them. The amount of bond to indemnify the Association for these certificates would run into a considerable sum."
Early in 1942, the trustees made two certain contracts to sell lands of the association and to accept as part of the purchase price shares of the association at book value. On closing title, the vendees tendered, and the trustees accepted, the *Page 65 
Fischel shares of the book value of $6,136, and credited this sum on the sales price. The purchasers did not, of course, deliver the stock certificates, or liquidation certificate, for they were already in the possession of the trustees. They delivered only assignments from Fischel's administratrix to themselves and their own assignment to the trustees. Do not suppose that the trustees were taken by surprise. Their counsel, Mr. Kuvin, had been informed in advance by the vendees that the Fischel shares would be tendered. He studied the matter and advised the trustees to accept the tender, after reading to them from Campbell v.Perth Amboy, c., Association, 76 N.J. Eq. 347. The trustees followed his advice.
Several months later, Mrs. Rose Laden appeared with the certificates which had been issued to the trust company and which she had bought from it in 1938, but had never had transferred to her own name. This court, by decree dated October 19th, 1943, adjudged that Mrs. Laden was the owner of the shares and ordered the trustees to recognize her as such. Are the trustees personally liable, as exceptant contends, for the loss resulting from their acceptance of the Fischel shares?
A trustee must use the same diligence and care that an ordinarily diligent and careful man would exercise in respect to his own property. Speakman v. Tatem, 48 N.J. Eq. 136, 149;50 N.J. Eq. 484. So long as he does so and acts within the scope of his powers, he is not liable for losses which result from errors of judgment. Heisler v. Sharp, 44 N.J. Eq. 167; In re CornExchange National Bank, 109 N.J. Eq. 169; In re Griggs, 125 N.J. Eq. 73; 127 N.J. Eq. 362. The trustees in the matter before me were authorized by statute to accept shares of the association in payment for land. Their error lay in their conclusion that the assignment by Fischels' administratrix passed title to the shares.
But the trustees followed the advice of their counsel, as careful men should do. Mr. Kuvin had been a member of the bar for fifteen years, of good reputation, and especially experienced in building and loan matters. He proceeded on the theory that the members' ledger was the primary evidence of stock ownership and that the trustees should accept *Page 66 
that evidence. Due care and good faith cannot justify a trustee who, under a mistake of law, intentionally does that which is prohibited or is beyond his powers or who intentionally omits what is required of him. He cannot plead the advice of counsel. For instance, if he purposely invests in second mortgages, under erroneous advice that such investments are permitted, he is liable for any loss which results. But where a trustee acts within his powers in good faith, he is safe if he exercises due care. To vary the above example, he invests in a mortgage, relying on the certificate of counsel that it is a first lien. Although it proves to be a second lien, the trustee is not liable, for he acted as a careful man. We may generalize and say that a trustee can safely rely on counsel upon legal questions which arise in the management of the estate when the ordinarily diligent and careful man would do the like in respect to his own property. 2 Scott on Trusts, 1086, c. For example, the construction of a contract. Sharp's Estate, 61 N.J. Eq. 601.
The lien of a mortgage. Four Corners Building and Loan v.Schwarzwaelder, 88 N.J. Eq. 545; In re Leonard, 107 N.J. Eq. 235.
The invalidity of a tax. In re Hazeltine, 119 N.J. Eq. 308.
The good faith of the trustees is not challenged. The record does not disclose carelessness or inattention to duty. On the contrary, the trustees ascertained the facts relative to the Fischel shares, as disclosed by the records within their control; they made inquiry of the Federal Trust Company which seemed to them the only possible adverse claimant; they sought the advice of counsel of excellent repute, and they followed his advice. More was not required of them. The exception is overruled. *Page 67