# NASHVILLE TRUST CO. et al. v. CAIN-SLOAN CO. et al.—193 S. W. (2d) 103.

Middle Section.   March 5, 1946.

Petition for Certiorari denied by Supreme Court, March 13, 1946.

40

Ferriss C. Bailey, of Nashville, guardian ad litem.

W. P. Cooper and Andrew Ewing, both of Nashville, for complainants who are appellees.

Armistead, Waller, Davis & Lansden, of Nashville, for defendants who are appellees.

HICKERSON, J.   The bill was filed to approve and ratify a lease of realty. The property involved is located on the southwest corner of Fifth Avenue and Church Street in the City of Nashville, Davidson County, Tennessee, and is commonly known as the Jackson Building. The chancellor ratified the lease contract. Parties to the suit, who were minors, appealed to this court through their guardian ad litem.

Mary E. Jackson owned a one-half undivided interest in the Jackson Building at the time of her death. Under her will this interest was conveyed to trustees who were given "the power to sell and convey any of the trust property, or any part thereof." The trustees were directed to pay the net proceeds of the trust estate to

named beneficiaries during their lives. When the named beneficiaries were dead, the trustees were directed to convey the trust estate to the grandchildren of the testatrix, or their descendants, per stirpes in fee simple; and, if there were no grandchildren, or descendants of grandchildren, then in existence, the trustees were directed to convey the trust property to the heirs at law of the testatrix.

These trustees purchased an additional one-sixth interest in the Jackson Building, so, at the time the bill was filed, the trustees under the will of Mary E. Jackson owned a two-thirds undivided interest in the Jackson Building.

At the time the bill was filed the other one-third interest was vested in Nashville Trust Company, Trustee, for the use and benefit of a life beneficiary. The title to this one-third interest came from the will of Selene Jackson Elliston. Under her will William Jackson Elliston, her son, was given a life estate in this one-third interest in the Jackson Building, "with the remainder to his lawful issue." In the event William Jackson Elliston died without issue the remainder in this one-third interest was devised "one-half to my nephew, William Harding Jackson, and the balance in equal shares to St. Thomas Hospital and Little Sisters of the Poor home for the aged, and St. Mary's Orphanage, all of Nashville, Tennessee."

The trustees representing all the life estates, with the advice and consent of the beneficiaries of such estates, entered into a lease contract with The Cain-Sloan Company whereby the Jackson Building was leased to The Cain-Sloan Company for a term of about ninety-eight years. W. H. Criswell, the real estate agent who handled the deal, and William J. Elliston, guardian of certain minors, joined in the lease. The relief sought in the bill

is the ratification and approval of this lease. The trustees, the beneficial owners of the life estates, and all contingent beneficiaries, in being, were made parties to the suit.

The chancellor appointed an able member of the Nashville Bar as guardian ad litem for the minor defendants. This guardian ad litem has shown commendable diligence and zeal in the representation of the parties under disability.

As we view the case, there are only three questions before us: (1) Did the chancery court have jurisdiction to ratify and approve the lease, so as to bind by its decree the contingent remaindermen? (2) Were the necessary parties before the court so as to bind all contingent remaindermen? (3) Did the proof justify the decree which the chancellor entered approving the lease?

These questions will be considered and determined in the order stated:

1. We hold the chancery court had inherent and statutory power and authority to enter the decree approving the lease which would bind contingent remaindermen.

Authorities supporting the inherent power of the court to enter such decree are: Ricardi v. Gaboury, 115 Tenn. 484, 89 S. W. 98; Bogert on Trusts and Trustees, volume 4, page 2290, section 790; 33 Am. Jur., 778-779, Life Estates, Remainders, etc., section 278; Restatement of the Law of Trust, page 500, section 189d.

Statutory authority to approve the lease so as to bind contingent remaindermen is found in the code of this state in the chapter entitled ''Sale of Property of Persons Under Disability,'' as these code sections have been construed by our Supreme Court.

Section 9227: ''The court of chancery may, for and on behalf of persons laboring under the disability of unsound mind or infancy, consent to and decree a sale of the prop-

erty, real or personal, of such persons, under the provisions of this chapter."

Section 9231: "The jurisdiction may be exercised as to any kind of property, and whether the interest or estate of the party under disability, or any of the parties litigant, is in possession, reversion, or remainder, or subject to any limitation, restriction or contingency whatsoever."

Section 9235: "The propriety of the relief sought shall appear to the satisfaction of the court, by proof of facts established by unexceptionable and disinterested witnesses, and not by statements of opinion."

Section 9236: "The questions put to the witnesses shall be such as to elicit the whole truth, and may, if necessary, be prescribed by the court; and the testimony shall be full, ample, and satisfactory, and leave no reasonable doubt on the mind of the court as to the properiety of granting the relief sought."

Section 9237: "Such sale may be decreed (1) when it is necessary for the support, education, and maintenance of the person under disability; (2) when it is manifestly for the interest of such person."

Section 9241: "Property so limited that persons not in being may have an estate or interest therein, may also be sold under the provisions of this chapter, if all those interested then in being are before the court, and it is satisfactorily shown to be necessary, or manifestly for the interest of such persons then in being, having a common interest with those who may come into being."

These code sections deal with the sale of realty of persons under disability, but our Supreme Court held that the power which was given to sell included the power to lease which was a lesser estate. On this question the Supreme Court said, Ricardi v. Gaboury, 115 Tenn. 484, 493, 89 S. W. 98, 100: "Without the support of authority,

it would seem that, granting the jurisdiction of an equity court to dispose of the fee in a minor's real estate when it clearly appeared this was manifestly in his interest, the disposition of a lesser estate upon the same ground might equally be sanctioned by the court. It is to be observed that the making of a lease such as the one desired by the complainants in this cause does not deprive the parties of any interest in the property to be leased. Its effect is simply to prevent the lessors from entering upon the property and taking actual possession thereof as long as the terms of the lease are observed by the lessee. The title to the property, and the right of alienation subject to the lease, remain as if no lease had been executed.''

2. As stated, the trustees, the life beneficiaries, and all contingent beneficiaries, were made parties to the suit. The question then is, would all contingent remaindermen, who are not in being be bound by the decree when the foregoing persons are parties to the suit?

A similar question was before the court in Bransford Realty Company v. Andrews, 128 Tenn. 725, 734, 735, 164 S. W. 1175, 1178, and the court held the decree would bind the contingent remaindermen. The court said:

''As heretofore stated, she, the life tenant, was a party, her two children were parties, and the trustee was a party to this suit. We think that a valid decree of sale was made, with these parties before the court.

''The doctrine of virtual representation is thoroughly established in Tennessee. It is well settled that contingent limitations and executory devises to persons not in being, or uncertain and undeterminable at the time of the proceedings, may be bound by a decree against the person then claiming the vested estate. In suits to enforce a trust, or with reference to trust property, so limited in remainder, if the holder of the legal title, the life tenant, and

the persons in being in whom the remainder would become a vested estate if the life estate then fell in—if all these are parties, a valid decree may be pronounced."

■ The facts in the instant case support more strongly the application of the doctrine of virtual representation than the facts in Bransford Realty Company v. Andrews. In the case at bar, all contingent remaindermen, in being, were made parties. In Bransford Realty Company v. Andrews certain contingent remaindermen, in being, were not made parties to the suit. The court held, however, that they were bound by the decree although they were in being and not parties to the suit. Wherefore, we hold, under the authority of Bransford Realty Company v. Andrews, that all contingent remaindermen, in being and unborn, would be bound by the decree of the chancery court in the instant case.

■ 3. Was the decree justified under the evidence? The master, upon a reference, found the material facts in favor of approving the lease. His findings were based upon the testimony of former Governor Hill McAlister, one of the trustees, and a life beneficiary if his wife predeceased him; Charles Nelson, President of Nashville Trust Company, one of the trustees; and three disinterested, capable real estate business men in Nashville. These witnesses, with no controversy, testified to the facts found by the master and approved by the chancellor. The facts thus clearly established are these: The Jackson Building was constructed fifty years ago. It is now obsolete and wholly unfit for the purposes for which this property is best suited. The building cannot be repaired and put into proper condition for rental purposes. The only practical recourse is to remove the building and construct a new one on the lot.

The owners of the Jackson Building are numerous. The estates are uncertain and contingent. The remaindermen cannot be determined until the life estates fall in. Wherefore, it would be impossible to prorate the cost of erecting a new building among the life beneficiaries and the remaindermen. In addition thereto some of the life beneficiaries and some of the remaindermen are financially unable to contribute to the cost of a new building.

In its present condition the building yields an annual gross income of about $30,000 with one-third of that amount for expenses, leaving a net income of about $20,000. This gross income is inflated due to the condition of the times. Normally, the gross income and the net income would be much less. The class of tenants which can be procured for this old building are undesirable and hard to handle. The gross income will most certainly decrease and the expenses increase with a return of normal times.

The Cain-Sloan Company, the lessee under the lease in question, is probably the most desirable tenant for a lease of this magnitude in the City of Nashville. It is an old, well-established mercantile firm with an excellent financial rating and business reputation. It appears to be able to perform the lease contract.

The most pertinent provisions of the proposed lease are:

(a) The term of the lease is from August 1, 1945, through June 30, 2043.

(b) The net cash rent to the owners is: $30,000 annually for the first twenty years; 35,000 annually for the next twenty-five years; $40,000 annually for the next forty years; and $45,000 annually for the remainder of the lease. The rent is payable in monthly installments in advance.

(c) The lessee is to pay taxes of every kind and character, except income, inheritance or succession taxes.

(d) The lessee is to pay all fire and other insurance costs, and all maintenance cost.

(e) At sometime during the period of the lease the lessee at its own expense is to erect a new building on this lot at a cost of not less than $400,000 which is to become the property of the lessors at the expiration of the lease.

(f) There is a forfeiture clause which protects the owners in the event the lessee fails to perform the lease contract.

This lease is more favorable to the remaindermen than to the life beneficiaries, since the rent is graduated upward from $30,000 a year for the first twenty years to $45,000 a year for the last thirteen years. Normally, the life beneficiaries, with the execption of William J. Elliston, would not live beyond the first twenty years of the lease since their ages range from sixty-four years upward. William J. Elliston, who is the life beneficiary in only one-third of the realty, is forty-eight years old.

The remaindermen who will most probably take the fee when the life estates fall in are the chidren and grand-children of the life beneficiaries. We are strongly impressed with the excellent analysis of the entire situation which was given by Governor McAlister. He knew all about the entire matter to the minutest detail. His testimony showed a careful consideration of the questions involved. The conclusions which he reached convinced us that he was governed by a sincere desire to do exactly what he thought was right. It was the conclusion of this witness, the President of Nashville Trust Company and the three witnesses who were in no way interested that it was manifestly to the best interest of the contingent remaindermen and all parties concerned that the lease be approved. The

master so found, and the chancellor concurred and decreed accordingly.

It is stated in some of the decisions that such relief should not be granted because we cannot anticipate what conditions will be during the ninety-eight years of the lease. With the reason for that conclusion we readily agree, but we do not agree with the conclusion. We do not know what tomorrow will bring forth when that tomorrow is the succeeding day. Much less can we foretell with any degree of certainty what will be the status of man, and the conditions of the times, when that tomorrow is ninety-eight years removed. Persons now in being, will not then be in being and persons now unborn will then be in being. Things now modern and new may then be ancient and obsolete. The strange and almost mystical ideas of today may then be commonplace and of practical value. But that fact does not mean that man should not continue to conduct all of the affairs of life which are committed to his care. The best he can do is to do his best with an honest purpose and a sincere motive. We are convinced that the parties in interest in this lawsuit have followed that course. We think the lease which they negotiated should have been made by them. So far as we can see they exercised sound judgment in so doing. The chancellor had the power and jurisdiction to approve or refuse to approve that lease. He properly approved it.

The assignments of error are overruled. The decree of the chancery court is affirmed. The trustees of the Mary E. Jackson estate will pay two-thirds of all costs, and the trustee for William J. Elliston will pay one-third of all costs. Remand the cause for the enforcement of the decree.

Felts and Howell, JJ., concur,